UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. NO. 04-12214-JLT

| | |
|---|---|
| JOSEPH AND PAMELA SAMPSON,<br><br>    Plaintiffs<br><br>v.<br><br>TOWN OF SALISBURY and MICHAEL BASK in his capacity as Salisbury Town Manager and RON CHRIST, in his capacity as Town of Salisbury Chairman of the Conservation Commission,<br><br>    Defendants | MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

## I.     INTRODUCTION

In this action, plaintiffs assert an Equal Protection claim arising from the issuance of a

permit for construction of a home on property located across the street from their residence.  In

Count One of the First Amended Complaint (the "Complaint"), the plaintiffs assert a claim,

under 42 U.S.C. §1983, that the defendants Town of Salisbury (the "Town"), Town Manager

Michael Bask (the "Town Manager"), and the Chairman of the Town's Conservation

Commission, Ron Christ (the "Commission Chairman"), violated plaintiffs' Equal Protection

rights under the U.S. Constitution.[1]  In Count Two, plaintiffs claim that the defendants violated

their Equal Protection rights under the Massachusetts Declaration of Rights, though no

---

[1]The Town Manager and Commission Chairman are named in their official capacities only, and thus all claims against these defendants properly equate to claims against the Town.  See, e.g, Kentucky v. Graham, 473 U.S. 159, 165-66, 105 S.Ct. 3099 (1985); Febus-Rodriguez v. Betancourt-Lebron, 14 F.3d 87, 91 n.3.  Nonetheless, this Memorandum addresses plaintiffs' claims as if they were pled against these defendants in their individual capacities.

procedural conduit is identified.[2]  Count Three, which asserts a negligence claim, has already

been dismissed by the Court for failure to state a claim upon which relief can be granted.

The defendants move for summary judgment, on the grounds that (1) the Complaint is

barred by the Statute of Limitations; and (2) plaintiffs cannot establish an Equal Protection claim

against any defendant, as a matter of law.

II.    STATEMENT OF FACTS

The relevant facts underlying this case are set forth in the Defendants' Local Rule 56.1

Statement of Material Facts of Record, filed herewith.

III.    ARGUMENT

A.    Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law." Fed.R.Civ.P. 56(c).  Summary judgment should be entered where the non-moving party

has the burden of proof and, based on the record before the Court, "fails to make a showing

sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v.

Catrett, 477 U.S. 317, 322 (1987).  The moving party may prevail on summary judgment either

by submitting affirmative evidence negating an element of the nonmovant's claim, or

demonstrating that the nonmovant has no reasonable expectation of proving an element of the

claim due to insufficient evidence.  Fireman's Fund Ins. Co. v. Harley Realty Co., 24 F.Supp.2d

117, 118 (D.Mass. 1998, Keeton, J.).

---

[2]Count Two actually references "Part 1, Article 10" of the Declaration of Rights, which is the Takings Clause.  The text of Count Two indicates that plaintiffs intended to assert an Equal Protection violation, rather than a Taking.

B.     Judgment Should Enter for the Town, Dismissing the Complaint

As noted, plaintiffs assert that the Town violated plaintiffs' Equal Protection rights under

the federal and state constitutions.  Specifically, plaintiffs allege that at various times in 1998 and

1999, they requested and received "assurances" from Town officials that vacant property at 7

Wyman Greeley Street ("Lot 7"), which is located across the street from the plaintiffs' residence,

was "unbuildable" due to its proximity to nearby wetlands.  Complaint, ¶¶10-11, 13.  The

plaintiffs assert that these assurances caused them to forego an opportunity to purchase Lot 7,

which they would have done "to preserve their pristine view."  Complaint, ¶13.  In July, 1999,

George and Cheryl Andrews (the "Andrews") did purchase Lot 7, and applied to the Town's

Conservation Commission for an "Order of Conditions" to allow construction of a home on the

Lot.[3]  Complaint, ¶14.  On September 1, 1999, the Conservation Commission issued the

Andrews an Order of Conditions to allow construction of a home on Lot 7.  Complaint, ¶20.

As explained in detail below, judgment should enter for the defendants on the Complaint,

because (1) the Complaint is barred by the Statute of Limitations; and (2) plaintiffs cannot

establish an Equal Protection claim against any defendant, as a matter of law.

1.     The Complaint is Barred By the Statute of Limitations

The plaintiffs' Complaint should be dismissed because it is untimely.  The statute of

limitations on Count One, which is brought under Section 1983, is three years.  See Nieves v.

McSweeney, 241 F.3d 46, 51 (2001).  To the extent a cause of action may be brought directly

under the Massachusetts Declaration of Rights, as plaintiffs purport to do in Count Two, the

---

[3]As explained in more detail below, an "Order of Conditions" is a permit issued by a local Conservation
Commission to allow activity on or near wetlands, subject to conditions contained within the Order.  See G.L. c.131,
§40.

statute of limitations on such a claim would similarly be three years.  See Flynn v. Associated

Press, 401 Mass. 776, 782 (1988).[4]

Plaintiffs' claims of an Equal Protection violation accrued on September 1, 1999, when

the Town issued an Order of Conditions to allow the Andrews to build on Lot 7, Complaint, ¶20,

yet plaintiffs did not file this Complaint until June 3, 2004 – nearly five years after the alleged

injury.  Statement, ¶10.  Thus, the Complaint is untimely and should be dismissed on this basis

alone.

Any argument that plaintiffs did not know of their alleged injury until a later date, when

the Andrews built a house that allegedly differed from the one for which they were issued a

permit, is unavailing.  Plaintiffs' Equal Protection claims are not based on the fact that the

Andrews allegedly built a house that did not comply with the permit, but, rather, the fact that the

Andrews were issued a permit allowing construction in the first place.  This occurred on

September 1, 1999, and the Complaint is therefore barred by the statute of limitations.  See

Hanson Hous. Authy. v. Dryvit Sys., Inc., 29 Mass.App.Ct. 440, 445-446 (1990) ("the statute of

limitations begins to run when the injured person has notice of the claim. The 'notice' … is

simply knowledge that an injury has occurred").

2.      Plaintiffs Do Not Establish Municipal Liability

The Complaint asserts a claim against the Town, based on the alleged actions of its

officials.  It is axiomatic that no liability attaches to a municipality pursuant to a theory of

respondeat superior.  Monell v. Department of Social Servs., 436 U.S. 658, 691, 98 S.Ct. 2018

---

[4]Flynn applied the statute of limitations for tort actions set forth in G.L. c.260, §2A to civil rights claims brought under G.L. c.12, §§11H-I, the Massachusetts Civil Rights Act ("MCRA").  A search of relevant caselaw revealed no published decision addressing a claim that, like the one in Count Two, was brought directly under the Declaration of Rights, with no procedural conduit.

(1978).  Rather, liability lies only when a municipal "policy or custom" causes the alleged

constitutional deprivation.  Manarite v. City of Springfield, 957 F.2d 953, 958 (1st Cir.1992).

Plaintiffs, however, have not even alleged, much less established, any facts

demonstrating either that the Town's official policymakers were involved in the specific events

underlying the Complaint, see City of St. Louis v. Praprotnik, 485 U.S. 112, 122, 108 S.Ct. 915

(1988) ("governments should be held responsible when, and only when, their official policies

cause their employees to violate another person's constitutional rights"),[5] or that there was a

pattern of unconstitutional conduct that the Town's policymakers condoned or allowed.  See

Bordanaro v. McLeod, 871 F.2d 1151, 1156 (1st Cir.1989) (to prove unconstitutional custom,

plaintiff must demonstrate a pattern of misconduct "so well-settled and widespread that the

policymaking officials of the municipality can be said to have either actual or constructive

knowledge of it yet did nothing to end the practice").  As such, plaintiffs cannot establish a claim

for municipal liability, and their claims against the Town should be dismissed.

3.      Plaintiffs Do Not Establish Liability Against the Town Manager

"It is axiomatic that the liability of persons sued in their individual capacities must be

gauged in terms of their own actions."  Rogan v. Menino, 175 F.3d 75, 77-78 (1st Cir. 1999)

(dismissing claims against two defendants, where "the complaint does not allege (or even

insinuate) that either [of the defendants] directly participated in the actions that purportedly

violated [plaintiff's] rights").  Here, plaintiffs have not even alleged, much less established, any

wrongdoing by the defendant Town Manager.  Therefore, plaintiffs' claims against the Town

Manager must be dismissed.

---

[5]The Board of Selectmen is the Town's official policymaker, pursuant to the Town Charter.  Statement, ¶11.

4.      Plaintiffs Do Not Establish an Equal Protection Violation

The Complaint should also be dismissed because plaintiffs do not establish an Equal

Protection violation by any Town official.

As an initial matter, plaintiffs' claims fail because they cannot provide any competent

evidence supporting their allegations that Town officials "assured" them that Lot 7 was

"unbuildable."

Even if, arguendo, plaintiffs could establish that Town officials provided such assurances,

their Equal Protection claims would still fail.  Plaintiffs do not allege membership in a suspect

class or group, and thus appear to assert a so-called "class of one" claim.  See Village of

Willowbrook v. Olech, 528 U.S. 562, 564-65, 120 S.Ct. 1073 (2000).  In order to establish such a

claim, plaintiffs must prove they were "intentionally treated differently from others similarly

situated and that there is no rational basis for the difference in treatment."  Olech, 528 U.S. at

564 (emphasis added); see also Tapalian v. Tusino, 377 F.3d 1, 5 (1st Cir. 2004) (class-of-one

plaintiffs must prove that "compared with others similarly situated, [they were] selectively

treated ... based on impermissible considerations such as race, religion, intent to inhibit or punish

the exercise of constitutional rights, or malicious or bad faith intent to injure a person").[6]

These two inquiries may be conflated, where there exists "a differentiating characteristic

so self-evidently a basis for a reasonable classification as to show both dissimilarity and

reasonableness at the same time."  Walker v. Exeter Region Co-op. School Dist., 284 F.3d 42, 44

(1st Cir. 2002).  In other words, a single fact may serve both to distinguish plaintiffs from those

to whom they compare themselves and provide a rational basis for different treatment.

---

[6]The Equal Protection rights guaranteed by the Massachusetts Declaration of Rights are coextensive with those
guaranteed by the Fifth and Fourteenth Amendments.  Massachusetts Federation of Teachers, AFT, AFL-CIO v.
Board of Educ., 436 Mass. 763, 777; 767 N.E.2d 549 (2002).  Thus, plaintiffs' claims under the state and federal
constitutions are subject to the same analysis.  See School Comm. of Hatfield v. Board of Educ., 372 Mass. 513, 514
n. 2, 363 N.E.2d 237 (1977).

Just such a fact, demonstrating both dissimilarity and reasonableness, exists here. Plaintiffs claim that Town officials violated their Equal Protection rights by informing them that Lot 7 was unbuildable, but then issuing a permit to the Andrews allowing construction on Lot 7. Complaint, ¶¶10, 11, 13, 20. However, plaintiffs, unlike the Andrews, did not apply for approval to build on Lot 7. Statement, ¶5. This distinction not only makes the plaintiffs dissimilar from the Andrews, it is "self-evidently a rational justification for the discrepant treatment,'' Walker, 284 F.3d at 45, because, in the absence of such an application, the Town lacks legal authority, and practical ability, to determine whether property is "buildable" or not.

Specifically, the Massachusetts Wetlands Protection Act, G.L. c.131, §40, requires that any person intending to perform activity on land subject to the Act must file a Notice of Intent with the local Conservation Commission, prior to performing the activity. See G.L. c.131, §40, ¶1. The applicant is required to provide the Commission with certain information regarding the property and the activity, including a description of the project, project plans, and identification of any impact the project will have on land subject to the Wetlands Protection Act. See Code of Massachusetts Regulations, 310 CMR 10.05 (4)(a). The receipt of a Notice of Intent obligates the Conservation Commission to consider whether the proposed activity is permissible under the Act, and authorizes the Commission to perform certain functions necessary to make such a determination – such as holding a public hearing and conducting a site visit. See G.L. c.131, §40, ¶17. Within 21 days of closing its public hearing, the Conservation Commission must issue an Order of Conditions, either denying the requested permit or allowing the project to proceed, with conditions. See G.L. c.131, §40, ¶18. (The Andrews received an Order of Conditions

7

permitting the project).[7]

The Wetlands Protection Act also provides that any person may request, in writing, that the Conservation Commission determine whether a certain property or activity is subject to the Act. See G.L. c.131, §40, ¶3. Such written request is made in the form of a "Request for Determination of Applicability." See 310 CMR 10.05 (3)(a)(1). The Request "shall include sufficient information … to enable the conservation commission to find and view the area and to determine whether the proposed work will" be subject to the Act, and the Commission must hold a hearing on the Request. See 310 CMR 10.05 (3)(a)(2) and (3)(b)(1). The Commission must issue a written response to the Request within 21 days. See G.L. c.131, §40, ¶3; 310 CMR 10.05 (3)(b)(1).

Other than acting on a Notice of Intent or Request for Determination of Applicability, there is no other manner in which a Conservation Commission may determine if certain activity is permitted under the Wetlands Protection Act. Moreover, no agency or official in the Town, other than the Conservation Commission, has jurisdiction to determine whether certain property or activity is subject to the Act.

Here, the plaintiffs never filed either a Notice of Intent or a Request for Determination of Applicability with respect to Lot 7. Statement, ¶5. Without one of these applications before it, the Conservation Commission was not only unauthorized to make a determination as to whether Lot 7 was "buildable," it was practically unable to make such a determination, since it had no opportunity to perform the functions necessary to do so, such as visiting the site and reviewing materials related to the property and the proposed activity.

---

[7]Upon issuance of the Order of Conditions to the Andrews, the plaintiffs had both an administrative remedy available to them under G.L. c.131, §40, ¶19 (providing that a party aggrieved by the issuance of an Order of Conditions may appeal to the Department of Environmental Protection), and an action for judicial review in the Superior Court, pursuant to the Certiorari Statute, G.L. c.249, §4. Plaintiffs failed to pursue either of these remedies. Statement, ¶9.

Conversely, the Andrews <u>did</u> file a Notice of Intent and underwent the review process as provided in the Wetlands Protections Act.  <u>Complaint</u>, ¶¶14, 16.  The Notice of Intent gave the Conservation Commission the opportunity to receive and consider information necessary to determine whether Lot 7 was "buildable," and authorized the Commission to make such a determination.  This distinction between the plaintiffs and the Andrews is a distinction "so self-evidently a basis for a reasonable classification as to show both dissimilarity and reasonableness at the same time."  <u>Walker</u>, 284 F.3d at 44.  As such, plaintiffs cannot establish that the Town violated their Equal Protection rights by issuing a permit to allow the Andrews to build on Lot 7, and the Complaint should be dismissed.

To the extent plaintiffs claim that certain Town officials wrongfully "assured" them that Lot 7 was unbuildable in the absence of a Notice of Intent or Request for Determination, such assurances were beyond the authority of any Town official to make.  Thus, any such alleged assurances entitle the plaintiffs to no legal redress, in keeping with the well-established rule that "those who deal with the government are expected to know the law and may not rely on the conduct of government agents contrary to law."  <u>Heckler</u> v. <u>Community Health Servs. of Crawford County, Inc.</u>, 467 U.S. 51, 63, 104 S.Ct. 2218 (1984).  <u>See also</u> <u>Elio</u> v. <u>Zoning Bd. of Appeals of Barnstable</u>, 55 Mass.App.Ct. 424, 430, 432, 771 N.E.2d 199 (2002) (landowner not permitted to appeal building inspector's denial of request for zoning enforcement where inspector failed to provide written denial of request, as required by statute, even though inspector "advised [landowner] to pursue an appeal and helped her fill out a form purporting to do so").  As noted, the Conservation Commission is the only entity within the Town authorized to determine whether property or activity is subject to the Wetlands Protection Act, and the Commission may only make such a determination by acting on a Notice of Intent or Request for

Determination of Applicability.  <u>See</u> G.L. c.131, §40.  Moreover, there are other laws, most

notably zoning regulations, which affect whether property is "buildable," so that no single Town

official (indeed, no single Town board) may make the general determination that a property

meets all relevant laws and is thus "buildable."  As such, any Town official who "assured"

plaintiffs that Lot 7 was unbuildable acted beyond his or her authority, and such assurances do

not confer upon plaintiffs any legal right against the Town.

IV.    <u>CONCLUSION</u>

　　　WHEREFORE, the defendants request that this Court enter summary judgment in their

favor, dismissing the Complaint in its entirety.

                                        DEFENDANTS,

                                        By their attorneys,

                                        /s/Jackie Cowin
                                        George X. Pucci (BBO #555346)
                                        Jackie Cowin (BBO# 655880)
                                        Kopelman and Paige, P.C.
                                          Town Counsel
                                        31 St. James Avenue
                                        Boston, MA  02116
                                        (617) 556-0007

262899/SALI/0106