UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JOSEPH AND PAMELA SAMPSON, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Action No. 04-12214-JLT |
| | * | |
| TOWN OF SALISBURY, MICHAEL BASK in his capacity as Salisbury Town Manager, and RON CHRIST, in his capacity as Town of Salisbury Chairman of the Conservation Commission, | * * * * * * | |
| | * | |
| Defendants. | * | |

MEMORANDUM

July 20, 2006

TAURO, J.

Plaintiffs, Joseph and Pamela Sampson (collectively "Plaintiffs"), bring this action under 42 U.S.C. § 1983 and the Massachusetts Declaration of Rights, alleging that Defendants, Town of Salisbury ("the Town"), Michael Bask[1] ("Bask"), and Ron Christ[2] ("Christ") violated their rights to the equal protection of the law under the Fourteenth Amendment to the United States Constitution and under the Massachusetts Declaration of Rights.[3] Defendants have moved for

---

[1] Defendant Bask is the Town Manager of the Town of Salisbury and is here sued only in his official capacity as Town Manager.

[2] Defendant Christ served as the Chairman of the Town of Salisbury Conservation Commission and is here sued only in his official capacity as an employee of the Town of Salisbury.

[3] Plaintiffs also brought a negligence claim against all Defendants, which this court previously dismissed.

summary judgment on both counts.  For the reasons set forth below, Defendants' motion for summary judgment is ALLOWED.

## Background

In 1998, Plaintiffs decided to construct a home for their personal use on a lot they owned at 8 Wyman Greely Street, Salisbury, Massachusetts.[4]  Wyman Greely Street is a dead end street that borders on wetlands and a tidal salt marsh.  Any building activity on Wyman Greely Street property falls under the jurisdiction of the Town of Salisbury Conservation Commission.[5]  In furtherance of Plaintiffs' plans, Plaintiffs obtained all necessary building permits from state and local agencies.  Plaintiffs' involvement in this process necessitated extensive interaction with Salisbury town officials, including environmental and conservation officials.

Plaintiffs, at the same time, were concerned about future development on Lot 7, which is located directly across from Plaintiffs' lot.  Plaintiffs wanted to preserve the surrounding view, privacy, and quality of life that induced them to build a home on Wyman Greely Street.  Plaintiffs, accordingly, sought assurances from the Town that Lot 7 was unbuildable and that the Town therefore would not authorize construction on the lot.

On August 19, 1998, Plaintiffs raised their concerns about Lot 7 at an open town meeting.  At that meeting, the Town allegedly assured Plaintiffs that Lot 7 was unbuildable.  These assurances allegedly came from David Kadell of the State Army Corps of Engineers and from Ron Christ, the Chairman of the Salisbury Conservation Commission.  Plaintiffs relied upon these

---

[4] The following background facts are drawn from Pls.' First Am. Compl., Defs.' Mem. in Supp. of Defs.' Mot. for Summ. J., and Pls.' Opp. to Defs.' Mot. for Summ. J.

[5] See Massachusetts Wetlands Protection Act, Mass. Gen. Laws c. 131, § 40.

assurances and began construction on their home.

In March 1999, Plaintiffs considered purchasing Lot 7 to preserve their view, increase their property holdings, and ensure that nothing disrupted their enjoyment of their home or their quality of life. Town officials again assured Plaintiffs that Lot 7 was unbuildable. Plaintiffs, accordingly, did not purchase Lot 7. Plaintiffs never filed a Notice of Intent, a Request for Determination of Applicability, or any other formal building request with respect to Lot 7.[6]

In July 1999, George and Cheryl Andrews ("the Andrews") purchased Lot 7 with the intention of building a house thereon. The Andrews promptly filed a Notice of Intent with the Salisbury Conservation Commission requesting approval to construct a home on the lot.

Plaintiffs, soon thereafter, learned of and were troubled by the Andrews' intention to build on Lot 7. On July 15, 1999, the Salisbury Conservation Commission held a Notice of Intent meeting regarding the Andrews' construction plans for Lot 7. At the meeting, the Andrews presented detailed plans for a small scale house located on the southwest corner of Lot 7. Plaintiffs attended the public hearing, reviewed the Andrews' plans, and determined that the proposed house and its location would not compromise their privacy, view, or quality of life. Plaintiffs reluctantly accepted the idea that the Andrews would build a house on Lot 7.

On September 1, 1999, the Salisbury Conservation Commission issued an Order of Conditions for the Andrews' proposed construction on Lot 7. The Order of Conditions

---

[6] The Massachusetts Wetlands Protection Act requires property owners to file a "Notice of Intent" or a "Request for Determination of Applicability" in order to commence any construction on property that falls under the Act's jurisdiction. See Mass. Gen. Laws c. 131, § 40.

authorized the Andrews to begin the process of constructing their home.[7] Plaintiffs did not appeal or challenge the Order of Conditions under the procedures set forth in the Massachusetts Wetlands Protection Act.[8] On October 5, 2002, Defendants issued a building permit to the Andrews.

In August 2003, when the Andrews began construction, Plaintiffs realized that the house being built was substantially larger in scale, designed differently, and located differently than the one described at the July 15, 1999 Notice of Intent meeting. Plaintiffs argue that this new structure intrudes upon and destroys their pristine view, has significantly compromised their quality of life, and has harmed their property value.

Plaintiffs contend that Defendants' abovementioned actions violated Plaintiffs' rights to the equal protection of the law under the Fourteenth Amendment to the United States Constitution and the Massachusetts Declaration of Rights.[9] Plaintiffs argue that Town officials intentionally and without a rational basis assured Plaintiffs that Lot 7 was unbuildable, but later authorized the Andrews to construct a home on the very same property.

## Discussion

---

[7] At this point the Andrews still had to satisfy the necessary local requirements, including obtaining a building permit. The Order of Conditions, however, is the first official Town declaration that the lot is buildable and that the Andrews' plans are consistent with the Massachusetts Wetlands Protection Act.

[8] See Mass. Gen. Laws c. 131, § 40 (granting aggrieved parties the right to appeal an order of conditions to the Massachusetts Department of Environmental Protection and to request certain enforcement actions against violations of the Act).

[9] Plaintiffs First Amended Complaint cites Part 1, Article 10 of the Massachusetts Declaration of Rights. Part 1, Article 10 is, however, the Massachusetts "takings clause." This court interprets Plaintiffs complaint to bring the state equal protection claim under Part 1, Article 1 of the Massachusetts Declaration of Rights. See Mass. Decl. of Rights, Pt. 1, Art. I.

4

A.     **Summary Judgment Standard**

Summary judgment is appropriate when the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[10] "Pursuant to this standard, the 'party seeking summary judgment [must] make a preliminary showing that no genuine issue of material fact exists.  Once the movant has made this showing, the nonmovant must contradict the showing by pointing to specific facts demonstrating that there is, indeed, a trialworthy issue.'"[11]

In evaluating a motion for summary judgment, a court "'must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor.'"[12]  A court, however, need not afford any weight to "'conclusory allegations, improbable inferences, and unsupported speculation.'"[13]  Summary judgment provides the necessary opportunity for a court "'to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.'"[14]

B.     **Statute of Limitations**

---

[10] Fed. R. Civ. P. 56(c).

[11] Santiago v. Feeney, 379 F. Supp. 2d 150, 154 (D. Mass. 2005) (quoting Blackie v. Maine, 75 F.3d 716, 721 (1st Cir. 1996) (quoting Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995))).

[12] Id. (quoting Mullin v. Raytheon Co., 164 F.3d 696, 698 (1st Cir. 1999) (quoting Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990))).

[13] Id. (quoting Bloomfield v. Bernardi Automall Trust, 170 F. Supp. 2d 36, 40 (D. Mass. 2001) (quoting Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990))).

[14] Santiago, 379 F. Supp. 2d at 154-55 (quoting Mullin, 164 F.3d at 698 (quoting Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, 794 (1st Cir. 1992))).

Defendants' first argument is that Plaintiffs' federal and state equal protection claims are barred by the applicable statutes of limitations. Plaintiffs bring their federal equal protection claim under 42 U.S.C. § 1983.[15] In a § 1983 claim, the applicable statute of limitations is the state law limitations period for personal injury claims.[16] Under Massachusetts law, personal injury claims are governed by a three-year statute of limitations.[17] The determination of when a § 1983 cause of action accrues, however, is controlled by federal law.[18] This legal distinction has no practical effect in this case as "[b]oth federal and Massachusetts law agree that a § 1983 claim accrues when a plaintiff knows or has reason to know of his injury."[19]

Plaintiffs also advance a state equal protection claim under the Massachusetts Declaration of Rights. This court interprets Plaintiffs' state claim as brought through the procedural conduit of the Massachusetts Civil Rights Act ("MCRA").[20] The MCRA allows individuals to bring private claims alleging the deprivation of state and federal constitutional rights and is the state law

---

[15] See 42 U.S.C. § 1983 (2000).

[16] See Poy v. Boutselis, 352 F.3d 479, 483 (1st Cir. 2003) (citing Wilson v. Garcia, 471 U.S. 261, 273 (1984), superceded by statute on other grounds as stated in, Jones v. R.R. Donnelley & Sons, Co., 541 U.S. 369, 377-78 (2004)).

[17] Mass. Gen. Laws c. 260, § 2A (2005); Poy, 352 F.3d at 483.

[18] See Poy, 352 F.3d at 483 (citing Guzman-Rivera v. Rivera-Cruz, 29 F.3d 3, 5 (1st Cir. 1994)).

[19] Id. (citing Nieves v. McSweeney, 241 F.3d 46, 52 (1st Cir. 2001) & Riley v. Presnell, 565 N.E.2d 780, 784 (Mass. 1991)).

[20] See Mass. Gen. Laws c. 12, § 11I ("Any person whose exercise or enjoyment of rights secured by the constitution or laws of the United Sates, or of rights secured by the constitution or laws of the commonwealth, has been interfered with, or attempted to be interfered with . . . may institute and prosecute in his own name and on his own behalf a civil action for injunctive and other appropriate equitable relief . . . including the award of compensatory money damages.").

parallel to the federal § 1983.[21]  Under the MCRA, the applicable statute of limitations is three years.[22]

The MCRA statute of limitation begins running once a plaintiff knows or has reason to know of the alleged wrongful acts.[23]  A plaintiff need not know the extent or severity of the harm suffered.[24]  To start the limitations period a plaintiff need only have knowledge of all the facts necessary to make out his or her civil rights claim.[25]  The limitations period begins on the date of the wrongful act, "unless the wrong is 'inherently unknowable.'"[26]  When the alleged injury is "inherently unknowable," the applicable statute of limitations may be tolled under the discovery rule.[27]  Plaintiffs do not argue that the alleged wrongful act in this case was inherently unknowable, or that the discovery rule should apply.

The applicable statutes of limitations are both three years.  The issue, therefore, is whether Plaintiffs' causes of action accrued more than three years before Plaintiffs filed their original complaint.  Plaintiffs filed their complaint on June 3, 2004.  If Plaintiffs' equal protection claims accrued before June 3, 2001, then their claims are time-barred.

---

[21] See, e.g., Mitchell v. City of Boston, 130 F. Supp. 2d 201, 214 (D. Mass. 2001).

[22] See Flynn v. Associated Press, 519 N.E.2d 1304, 1305 (Mass. 1988); Pagliuca v. City of Boston, 626 N.E.2d 625, 627 (Mass. App. Ct. 1994); see also Mitchell, 130 F. Supp. 2d at 214.

[23] See Mitchell, 130 F. Supp. 2d at 214; Pagliuca, 626 N.E.2d at 627.

[24] See Pagliuca, 626 N.E.2d at 627.

[25] See id.

[26] Id. (quoting Flynn, 519 N.E.2d at 1307).

[27] See id.

Defendants argue that Plaintiffs' claims accrued on September 1, 1999 when the Town issued an Order of Conditions affirmatively authorizing the Andrews to build a home on Lot 7. Plaintiffs, on the other hand, argue that they did not have notice of their injury until August 2003. Plaintiffs claim that they initially accepted the idea that the Andrews would build a home on the lot, but that they relied on the small scale architectural drawings attached to the Order of Conditions. Plaintiffs contend, therefore, that they did not have notice of their injury until August 2003 when they observed the construction of a much larger and more obtrusive home.

Plaintiffs alleges that Defendants deprived them of their equal protection rights by intentionally and arbitrarily treating them differently than other similarly situated individuals. Plaintiffs, more specifically, claim that Defendants allowed the Andrews to build a home on Lot 7 after repeatedly telling Plaintiffs that the lot was unbuildable, thereby frustrating any attempt by Plaintiffs to purchase or build on the property. The "wrongful act" or "injury" alleged in any equal protection claim is some form of differential treatment. Defendants, therefore, injured Plaintiffs, if at all, by treating them differently than the Andrews. This injury occurred on September 1, 1999 when Defendants officially approved the Andrews' plans to build a home on Lot 7, after allegedly assuring Plaintiffs that no such home would or could be built on the lot. Plaintiffs' alleged constitutional injury is not that the Andrews built a larger house than the Order of Conditions allowed or that Defendants violated the Wetlands Protection Act. The alleged harm, at its simplest, is irrational differential treatment.

The entire building application process was public. Plaintiffs knew how to get involved in the process, and Plaintiffs had personal experience with the various requirements and the relevant Town officials. Plaintiffs did in fact get involved. Plaintiffs attended the Notice of Intent meeting

and even accepted the idea that Defendants would allow the Andrews to build on the lot upon which Plaintiffs were effectively prohibited from building. On September 1, 1999, when the public Order of Conditions issued, Plaintiffs knew or should reasonably have known of the facts necessary to assert their equal protection claim. The fact that the Andrews built a larger house merely increases the extent of the damage caused by Defendants allegedly differential treatment of Plaintiffs. The existence of a larger house, however, is not a constitutional harm nor does it alone raise an equal protection claim. The larger house on Lot 7 is nothing more than a by-product of the alleged equal protection violation which illustrates only the severity of Plaintiffs' alleged injury.[28] Plaintiffs' equal protection claims accrued on September 1, 1999, approximately four years and eight months before Plaintiffs filed their original complaint. Plaintiffs' equal protection claims are time-barred under the respective three-year statutes of limitations applicable to § 1983 and the MCRA.

**C.    Municipal Liability**

Defendants next argue that Plaintiffs have failed to establish municipal liability against the Town. Under § 1983, a local government faces liability only when a municipal custom or policy causes the alleged constitutional deprivation.[29] Municipal liability attaches only when the municipality itself is the moving force behind the alleged harm and never under the doctrine of

---

[28] See Pagliuca, 626 N.E.2d at 627-28 (explaining that although the plaintiff did not know the severity of the harm she suffered, the statute of limitations began running when "she knew of all the facts necessary to make out her civil rights claim").

[29] Monell v. Dep't of Soc. Servs. of New York, 436 U.S. 658, 694 (1978); Manarite v. City of Springfield, 957 F.2d 953, 958 (1st Cir. 1992) (citing City of Canton v. Harris, 489 U.S. 378, 385 (1989)); Walsh v. Town of Lakeville, ___ F. Supp. 2d ___, 2006 WL 1216463, at * 11 (D. Mass. April 10, 2006).

*respondeat superior*.[30]  For Plaintiffs to prevail on their § 1983 claim against the Town they must establish: (1) that a municipal custom or policy of intentionally violating, or deliberate indifference to the violation of, constitutional rights existed; and (2) that the custom or policy was the cause of and moving force behind Plaintiffs alleged constitutional deprivation.[31]  An official custom or policy exists "where – and only where – a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."[32]  An official custom or policy, furthermore, "must be so well settled and widespread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice."[33]

Plaintiffs have offered no evidence that the Town of Salisbury had an official policy or custom that violated, or was deliberately indifferent to, Plaintiffs' constitutional rights.  Plaintiffs allege that the Town, through the Conservation Commission, approved the Andrews' construction plans for Lot 7 after Defendant Christ and others assured Plaintiffs that the lot was unbuildable.  Plaintiffs have produced no evidence that the moving force behind this alleged constitutional violation was a practice so well settled and widespread as to attribute its

---

[30] See City of Canton, 489 U.S. at 385 (citing Monell, 436 U.S. at 694-95).

[31] See Bordanaro v. McLeod, 871 F.2d 1151, 1156 (1st Cir. 1989); Walsh, 2006 WL 1216463, at *11.

[32] Pembaur v. City of Cincinnati, 475 U.S. 469, 483-84 (1986) (citing Oklahoma City v. Tuttle, 471 U.S. 808, 823 (1985)); see also Wilson v. City of Boston, 421 F.3d 45, 59 (1st Cir. 2005).

[33] Bordanaro, 871 F.2d at 1156.

commission to the municipality as a whole.[34] Even assuming that Defendant Christ, as Chairman of the Conservation Commission, is an official policymaker for the Town of Salisbury, the informal act of telling Plaintiffs that Lot 7 was unbuildable does not rise to the level of an official municipal policy or custom. Plaintiffs, in fact, have alleged nothing more than the discretionary act of one Town official. "The fact that a particular official – even a policymaking official – has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion."[35] Even assuming that Defendant Christ intentionally mislead Plaintiffs, Defendant Christ's actions are not attributable to any municipal policy or custom, but are more appropriately characterized as specific acts of a municipal employee.[36] Plaintiffs' equal protection claims against the Town of Salisbury, therefore, fail as a matter of law.[37]

Plaintiffs assert their claims against Defendants Bask and Christ in their official capacities and, therefore, these claims are similarly deficient.[38] A claim brought against a government official in his or her official capacity "is, in all respects other than name, to be treated as a suit

---

[34] See id.

[35] Pembaur, 475 U.S. at 481-82.

[36] See id. at 479 ("The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.").

[37] Plaintiffs presented no opposition to this argument in their summary judgment opposition brief nor did they raise objections during the motion hearing.

[38] See Kentucky v. Graham, 473 U.S. 159, 165-66 (1985); Fletcher v. Szostkiewicz, 190 F. Supp. 2d 217, 230 (D. Mass. 2002) (explaining that suits against local government officials in their official capacities are, in substance, claims against the city).

against the [governmental] entity."[39] As discussed above, Plaintiffs fail to establish municipal liability under § 1983 and, therefore, their equal protection claims against all Defendants fail as a matter of law.

Plaintiffs' state claims against all of the Defendants fail for similar reasons. A municipality cannot be held liable under the Massachusetts Civil Rights Act.[40] As mentioned above, the claims against Defendants Bask and Christ are brought against them in their official capacities and thus are effectively against the Town.[41] Plaintiffs cannot bring an MCRA claim against the Town of Salisbury.[42] Plaintiffs state claims against all Defendants under the MCRA therefore fail as a matter of law.[43]

**D.   Equal Protection**

Even if Plaintiffs could clear these legal hurdles, Plaintiffs have failed to proffer facts sufficient to establish their equal protection claims. Plaintiffs claim that Defendants intentionally violated their rights to the equal protection of the law as guaranteed by the Fourteenth Amendment and the Massachusetts Declaration of Rights. Plaintiffs bring their equal protection claims under the "class of one" standard. The analytical standard applicable to Plaintiffs' federal

---

[39] Graham, 473 U.S. at 166 (explaining that an official capacity lawsuit "is *not* a suit against the official personally, for the real party in interest is the entity").

[40] Howcroft v. City of Peabody, 747 N.E.2d 729, 744-45 (Mass. App. Ct. 2001) (holding that a municipality is not a "person" under the MCRA); see also Kelley v. Laforce, 288 F.3d 1, 11 n.9 (1st Cir. 2002); Fletcher, 190 F. Supp. 2d at 230.

[41] See Graham, 473 U.S. at 166; Fletcher, 190 F. Supp. 2d at 230.

[42] See Howcroft, 747 N.E.2d at 744-45.

[43] See Fletcher, 190 F. Supp. 2d at 230.

and state claims are the same.[44]

A class of one equal protection claim exists "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."[45] To succeed under this standard, Plaintiffs must establish that Defendants (1) intentionally treated them differently; (2) from others similarly situated; and (3) without a rational basis for the disparate treatment.[46] The First Circuit and at least one court in this district have suggested that to succeed on a class of one claim a plaintiff must also establish that a defendant's differential treatment was motivated by a malicious or bad faith intent to harm the plaintiff.[47] Requiring a subjective bad faith or illegitimate animus factor is consistent with the threat that class of one claims may transform "run-of-the-mill zoning cases into cases of constitutional right."[48] The United States Supreme Court, however, explicitly avoided the

---

[44] See Massachusetts Fed'n of Teachers, AFT, AFL-CIO v. Bd. of Educ., 767 N.E.2d 549, 562 (Mass. 2002); Chebacco Liquor Mart, Inc. v. Alcoholic Beverages Control Comm'n, 711 N.E.2d 135, 137 (Mass. 1999); Digiovanni v. Gulberg, 2005 WL 1593608, at *10-11 (Mass. Land Ct.) (applying the federal "class of one" equal protection standard to claims under both the Fourteenth Amendment and the Massachusetts Declaration of Rights).

[45] Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).

[46] See Walsh, 2006 WL 1216463, at *6; Pariseau v. City of Brockton, 135 F. Supp. 2d 257, 263 (D. Mass. 2001).

[47] See Tapalian v. Tusino, 377 F.3d 1, 5-6 (1st Cir. 2004) (explaining that for a plaintiff to succeed on an equal protection claim he must establish that "'compared with others similarly situated, [he] was selectively treated . . . based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" (citing Barrington Cove Ltd. P'ship v. R.I. Hous. and Mortgage Fin. Corp., 246 F.3d 1, 7 (1st Cir. 2001))); Walsh, 2006 WL 1216463, at *6-7.

[48] Olech, 528 U.S. at 565-66 (Breyer, J. concurring) ("Zoning decisions . . . will often, perhaps almost always, treat one landowner differently from another, and one might claim that, when a city's zoning authority takes an action that fails to conform to a city zoning regulation, it

13

question of whether this additional factor is required in class of one cases,[49] and case law in the First Circuit is unclear on the issue.[50]  It is unnecessary, however, for this court to resolve the issue here.  Plaintiffs have failed to establish the other three necessary factors and, therefore, fail to state a legally sufficient equal protection claim.

Plaintiffs fail under the first prong, which requires a showing of intentional discrimination.[51]  The burden to show purposeful discriminatory intent is a heavy one to satisfy.[52]  "'Discriminatory purpose . . . implies that the decisionmaker . . . selected or reaffirmed a course of action at least in part "because of," not merely "in spite of," its adverse effects upon an

---

lacks a 'rational basis' for its action . . . ."); see also Walsh, 2006 WL 1216463, at *7.

[49] See Olech, 528 U.S. at 565 ("We therefore affirm the judgment of the Court of Appeals, but do not reach the alternative theory of "subjective ill will" relied on by that court.").

[50] See Walsh, 2006 WL 1216463, at *6-7 (grappling with the First Circuit's "seemingly antithetical case law" and holding that malicious or bad faith intent is a necessary element of a class of one claim).  Other circuit courts of appeal have struggled with the issue of whether the additional factor of subjective ill-will is required to state a legally sufficient class of one equal protection claim.  See, e.g., Jicarilla Apache Nation v. Rio Arriba County, 440 F.3d 1202, 1210 (10th Cir. 2006) (listing several cases in which the court has considered the issue but disposing of the case on other grounds without reaching the ultimate issue); Racine Charter One, Inc. v. Racine Unified Sch. Dist., 424 F.3d 677, 683-84 (7th Cir. 2005) (noting the contradictory lines of cases in the circuit and reserving the issue for a later case); Bizzarro v. Miranda, 394 F.3d 82, 88 (2d Cir. 2005) (explaining that the court has not yet determined whether the additional malice factor is required and reserving the question); Boone v. Spurgess, 385 F.3d 923, 932 (6th Cir. 2004) (holding that in a class of one claim under Olech a showing of illegitimate animus is not required); Shipp v. McMahon, 234 F.3d 907, 916 (5th Cir. 2000) ("To state a claim sufficient for relief, a single plaintiff must allege that an illegitimate animus or ill-will motivated her intentional different treatment from others similarly situated and that no rational basis existed for such treatment"), overruled on other grounds, McClendon v. City of Columbia, 305 F.3d 314, 322 n.4 (5th Cir. 2002).

[51] See Pariseau, 135 F. Supp. 2d at 263 ("The arbitrariness of a . . . decision is not, without more, sufficient to state an equal protection claim.").

[52] See id. at 263-64.

identifiable group [or person].'"[53] The existence of disparate treatment alone is insufficient to support a reasonable inference of "intentional" discrimination.[54]

Plaintiffs have presented no evidence that Defendants intentionally discriminated against them. They have not shown that the Conservation Commission's decision to grant the Andrews approval to build a home on Lot 7 had anything to do with them. In fact, nothing in the record suggests that the Conservation Commission's decision was based on anything other than a thorough review of the Andrews' proposed building plans. Nor have Plaintiffs presented any evidence that shows that Defendant Christ or any Town official deliberately sought to mislead Plaintiffs or adversely affect Plaintiffs rights or their property by telling Plaintiffs that the lot was unbuildable. Plaintiffs have asserted nothing more than disparate treatment, which is insufficient to support an inference of intentional discrimination.

The second prong of the class of one analysis is whether Plaintiffs are "similarly situated" to the Andrews.[55] Courts should not interpret the similarly situated standard broadly.[56] Courts, instead, should limit the standard to the specific facts of the equal protection plaintiff's situation.[57]

---

[53] Id. at 264 (quoting Hayden v. Grayson, 134 F.3d 449, 454 (1st Cir. 1998)).

[54] See Ford v. Town of Grafton, 693 N.E.2d 1047, 1057 (Mass. App. Ct. 1998) (citing Soto v. Flores, 103 F.3d 1056, 1067 (1st Cir. 1997) (citing Dartmouth Review v. Dartmouth Coll., 889 F.2d 13, 16 (1st Cir. 1989))).

[55] See Lakeside Builders, Inc. v. Planning Bd. of Franklin, 2002 WL 31655250, at *2-3 (D. Mass. 2002).

[56] See id. at 3 (explaining that a broad definition of similarly situated is useless for equal protection analysis and "could be applied to any group of applicants where, looking back, one could see that there had been some who succeeded and some who failed").

[57] See id.

"'Exact correlation is neither likely nor necessary, but the cases must be fair congeners. In other words, apples should be compared to apples.'"[58]

The third prong of the class of one analysis asks whether Defendants had a rational basis for treating Plaintiffs differently. The rational basis test is "exceptionally deferential," and under this standard "[a]n equal protection claim will only succeed if the decision to treat an individual differently than those similarly situated is wholly arbitrary or irrational."[59] Here, the rational basis prong is entangled with the similarly situated analysis.[60] It is appropriate, therefore, to analyze both issues together.

The facts show that Plaintiffs have failed to satisfy both the similarly situated and the no rational basis prongs. Plaintiffs, unlike the Andrews, never applied for approval or submitted any formal inquiry to any town government official or entity regarding construction on Lot 7. Under the Wetlands Protection Act, the Town of Salisbury Conservation Commission has authority to officially declare a proposed building project permissible only after an applicant files a Notice of Intent and the Commission reviews the project plans and the possible impact of the proposed construction on the surrounding wetlands.[61] An applicant may also submit to the Commission a Request for Determination of Applicability, which requires the Commission to determine whether

---

[58] See id. (citing Dartmouth Review, 889 F.2d at 16).

[59] Wojcik v. Massachusetts State Lottery Comm'n, 300 F.3d 92, 104 (1st Cir. 2002).

[60] See Walker v. Exeter Region Coop. Sch. Dist., 284 F.3d 42, 44 (1st Cir. 2002) ("Decisions may sometimes use the similarly situated language to conflate the two inquiries – by pointing to a differentiating characteristic so self-evidently a basis for a reasonable classification as to show both dissimilarity and reasonableness at the same time.").

[61] See Mass. Gen. Laws c. 131, § 40.

the land in question is subject to the Wetlands Protection Act.[62]

The Andrews followed the specific requirements necessary to initiate construction on Lot 7. The Andrews filed a Notice of Intent with the Conservation Commission, submitted detailed plans, and subjected their plans to public hearing and review. The Conservation Commission, after considering the Andrews' plans, issued an Order of Conditions allowing construction on Lot 7. Plaintiffs never filed a Notice of Intent with the Conservation Commission. Nor did Plaintiffs ever file a Request for Determination of Applicability. Plaintiffs took none of the formal steps necessary to initiate a building project or to allow the Commission to make a formal decision. Plaintiffs, at best, made informal inquiries regarding Lot 7.

The Conservation Commission's decision to allow the Andrews to construct a home on Lot 7 was based on review of the Andrews' detailed plans, their formal Notice of Intent, and a public hearing. Plaintiffs never filed a Notice of Intent and, therefore, never gave the Conservation Commission an opportunity to determine whether Plaintiffs' own building plans were permissible under the Wetlands Act. Plaintiffs, furthermore, even assented to the Andrews' plans. Given Plaintiffs' failure to submit the necessary applications, the Conservation Commission's decision was not irrational or arbitrary.

For the same reasons, Plaintiffs were not similarly situated with the Andrews. The Andrews filed the necessary applications with detailed plans, while the Plaintiffs, at best, informally inquired into the status of Lot 7. The differences between Plaintiffs and the Andrews are so fundamental that Plaintiffs are not fairly comparable to the Andrews. In a similar case in this district, the court cautioned that broadly defining "similarly situated" would lead to absurd

---

[62] See id.

results.[63]

> For example, high school students whose applications to a particular college were rejected could allege that they were being treated differently from the "similarly situated" fellow students whose applications were accepted. In the example, one would want to know a good deal more about the merits of individual applicants before deciding who was similarly situated to whom.[64]

In this case, it is enough to say that the Andrews' formally applied to the Conservation Commission where Plaintiffs did not. Plaintiffs are not similarly situated to the Andrews for purposes of their class of one claims.

Plaintiffs have failed to establish that Defendants intentionally discriminated against them, that Plaintiffs and the Andrews were similarly situated, or that Defendants' decision lacked a rational basis. Plaintiffs' equal protection claims fail as a matter of law.

## Conclusion

Plaintiffs claims are barred by the applicable statutes of limitations. Plaintiffs fail to state sufficient claims for municipal liability against the Town of Salisbury and the individual Defendants sued in their official capacities. Plaintiffs' equal protection claims fail as a matter of law. For these reasons, Defendants' motion for summary judgment is ALLOWED. Plaintiffs' First Amended Complaint is hereby dismissed in its entirety.

AN ORDER WILL ISSUE

      /s/ Joseph L. Tauro
United States District Judge

---

[63] See Lakeside Builders, 2002 WL 31655250, at *3.

[64] Id.